Luis Iturrino López, Petitioner, *v.* District Court of Mayagüez, Respondent.

No. 1092. Argued January 22, 1937.—Decided February 17, 1937.

*Enrique Báez García* for petitioner. *R. A. Gómez, Prosecuting Attorney,* and *Luis Janer, Assistant Prosecuting Attorney,* for the People.

Mr. Chief Justice Del Toro delivered the opinion of the Court.

This is a *certiorari* proceeding. The writ was issued for the purpose of determining whether a procedural or a jurisdictional error had been committed with which the district

court of Mayagüez was charged in connection with a judgment finding the petitioner insane, who had been charged before the same court with the commission of a public offense. We have before us not only the original petition and the briefs for the petitioner and the district attorney, but also the original record in the district court.

From the record it appears that the District Attorney for the District of Mayagüez filed an information on May 19, 1936, against Luis Iturrino López, charging him with an assault with intent to kill. On the same day, in the presence of the defendant, the information was read. He pled not guilty and asked for trial by jury. The court designated Mr. Báez García as his counsel and set the trial for June 1, 1936. The record says, moreover, that the District Attorney asked the court for the appointment of three medical experts to advise the jury as to the mental conditions of the defendant, and that the court for that purpose appointed Drs. Lassisse, Lassisse Rivera and Cabán.

On June 1, 1936, the defendant stated to the court through his counsel that the medical expert Dr. Lassisse was ill, and asked that he be substituted by Dr. Olán Rivera. The District Attorney gave his consent and the court made the substitution, setting the trial for the 5th of the same month of June.

On June 2, the medical experts filed their written report. They certified that the defendant was suffering from a mental derangement, paranoic in nature. On June 5, the case was called on for hearing and the jury was selected. Counsel for the defendant stated to the court that the defendant had said that he did not wish any lawyer to defend him, that what he wanted was for the court to declare him insane. The court reminded counsel that he had been appointed *ex officio,* and the attorney agreed to continue to discharge his duty. The District Attorney then asked the court to excuse the jury while a decision was made as to the mental condition of the defendant in accordance with Section 439 of the

Code of Criminal Procedure. The court granted the motion. The District Attorney stated what he was going to prove. Counsel for the defense objected. He said:

"We are contending that the status of insanity as defined by our statutes provides a means to confine a person who is crazy or suffering from a mental ailment to the insane asylum. It is a right which the court has to send him to the insane asylum, but the theory of insanity is a defense for the defendant and not a defense for the government. The government ought to accuse an individual and then the defendant defend himself against responsibility for the offense by making it appear that the defendant is incapacitated because he is insane. The Code of Criminal Procedure itself sustains our theory."

The judge read Sections 439, 440 and 442 of the Code of Criminal Procedure. Counsel read Section 441. The judge stated that what he was going to do was make a prior investigation and overruled the objection of the defense. Counsel for the defendant took exception to the ruling of the court.

The District Attorney offered the record of civil case No. 12898, removed from the District Court of Aguadilla to Mayagüez, with respect to a declaration of incapacity, from which it appears that the defendant, according to the pleadings, the evidence and the law, was declared incapable of managing his properties, as suffering from monomania. Decision of March 12, 1919.

The experts were called as witnesses and testified in full, supporting their report. New and more detailed written reports of the doctors were made part of the record. From them it appears that the defendant was confined to an insane asylum in Havana, Cuba, for many years.

Upon the merits of the evidence so introduced, the District Attorney asked the court "to declare the present defendant completely irresponsible and to order him to be confined in the Insular Insane Asylum of Puerto Rico, and not to hold the trial in this case until his reason should return."

The position of the defense was then set forth as follows:

"Mr. Báez, counsel who has the honor of addressing the court, wishes to make it appear that he offers no evidence whatever in opposition to the evidence offered by the District Attorney, for the reason that the defense believes that it is up to the defense to investigate the sanity of the defendant and no up to the District Attorney; and for the reason that since in such cases the affirmative belongs to the defense and since the defense has raised no question as regards to sanity, all the evidence presented by the District Attorney is impertinent and irrelevant and has no other object than to prejudice the rights of the defendant. We submit the case."

The decision of the court sustained the position of the District Attorney. The petitioner assigns eight errors. In brief he contends that the court adopted an erroneous procedure and acted without jurisdiction.

▇▇▇ In our judgment, the proceeding followed by the court finds support in law. This is not a case of dangerous insanity, in accordance with the special law upon the subject, Act of 1907 (Comp. Stat. 1911, sec. 1006) as amended by Act No. 26 of 1912, in turn amended by Acts Nos. 32 of 1913 and 54 of 1928, which determines the procedure to be followed for the protection of those persons incapable of managing their own persons and property, as well as for protecting the community from violent acts which might be done by persons suffering from dangerous insanity.

Similarly the question of sanity was not raised as a defense in a prosecution brought by The People through its District Attorney. It was raised by the District Attorney and heard and decided by the court in accordance with Section 439 of the Code of Criminal Procedure.

That Section provides that a person cannot be tried, adjudged to punishment, or punished for a public offense, while he is insane. The following Section 440, directs that when an action is called for trial, or at any time during the trial, or when the defendant is brought up for judgment on conviction, if a substantial doubt arise as to the sanity of

the defendant, the court must order the question as to his sanity to be submitted to three experts designated by the court, and the trial or the pronouncing or judgment must be suspended until the question is determined by their decision.

It does not follow from the fact that Section 441 in establishing the order of procedure leaves the opening of the case to counsel for the defendant that, as the petitioner contends, the question may not be raised by the District Attorney.

Whether the question be raised by the defense, by the District Attorney, or by the court itself, if it comes to the attention of the court in a manner worthy of credit, the court must appoint experts, and it is before them acting as jurors and the court, which directs the proceeding, that the proceeding provided by Section 441 of the Code of Criminal Procedure is held.

In the same way, it was not necessary for the District Attorney to raise the question as he did by a sworn statement. In a case such as this, in which in the court itself there appeared a record of the incapacity to which we have made reference, such a requirement was not indispensable. The deviation to which attention is called is that instead of constituting the experts into a jury, the court confined itself to appointing them and they commenced to act immediately and that after a personal examination of the defendant they rendered their opinion in writing, as we are already aware, and that at the moment of the hearing what they did was to submit themselves to an interrogatory confirming in all of its parts their opinion, all in open court, in the presence of the defendant and with the intervention of his counsel and the District Attorney. That deviation or informality, under the surrounding circumstances, does not nullify the procedure. The defendant suffered no prejudice.

Perhaps it would have been better to follow the rule laid down by the defense because the fact is that not only does it seem to appear from the evidence that the defendant was insane at the moment of the trial, but that he was insane

when he committed the criminal act with which he was charged, in which case he was incapable of committing any crime in accordance with Section 39 of the Penal Code. But this does not mean that the court could not limit itself to an investigation of only the present time and that it could not enter an order such as it did following the provisions of Section 442 of the Code of Criminal Procedure, which says:

"If the experts find the defendant sane, the trial must proceed, or judgment be pronounced, as the case may be. If the experts find the defendant insane, the trial or judgment must be suspended until he becomes sane, and the court must order that he be in the meantime committed to an insane asylum, and that upon his becoming sane he be delivered to the warden of the jail."

The writ already issued must therefore be vacated and the record returned to the district court of its origin.

Mr. Justice Wolf and Mr. Justice Córdova Dávila took no part in the decision of this case.